## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

Eric R. Brant,

                Plaintiff,

v.

Schneider National, Inc., Schneider National
Carriers, Inc., Schneider Finance, Inc., & DOE
Defendants 1-10,

                Defendants.

**20-CV-1049**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

1.     This lawsuit seeks redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. ("FLSA") and Wisconsin state law for failing to pay required minimum wages and unlawfully deducting amounts from the wages of employees that Defendants misclassified as independent contractors, and for violations of the Truth in Leasing Act ("TILA") pursuant to 49 U.S.C. § 14704 for requiring Plaintiff and putative class members to enter into leases that violated the provisions of that Act..

2.     Plaintiff brings his federal minimum wage claim under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b) and his state claims and TILA claims as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.     Defendants include Schneider National Inc., a publicly-traded company, and its wholly-owned subsidiaries, Schneider National Carriers, Inc., and Schneider Finance, Inc. (collectively, "Defendants" or "Schneider") which are owned and operated for a common business purpose: transportation of freight for Schneider's customers.

4.     To accomplish its business purpose, Schneider relies on thousands of long-haul, interstate truck drivers to deliver freight across the United States.

5.     Schneider's drivers include employee "company drivers," who Schneider classifies as employees, and so called "owner-operators," who Defendants misclassify as independent contractors.   Defendants refer to the drivers it categorizes as independent contractors as "owner-operators" even though many, if not most of them, own nothing but instead lease their trucks from Schneider.

6.     According to Schneider's quarterly report filed with the Securities and Exchange Commission, from January 1, 2020 to March 31, 2020, for example, Schneider had an average of 10,207 trucks available per month to transport freight, of which 2,900 (or about 28%) were operated by so-called "owner-operators."

7.     According to Schneider's public filings with the United States Department of Transportation, Schneider had 12,919 drivers and over 1.1 billion miles driven for its commercial vehicles during 2019.

8.     Defendants' misclassification of drivers, including Plaintiff and proposed Class Members (collectively, "Drivers"), as independent contractors forms a significant part of a labor scheme crafted to pay their employees less than the minimum wage required by federal and state law, to shift virtually all related business expenses and risk to the employees, and to defeat all federal and state protections for employees, such as Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the National Labor Relations Act, and wage protection statutes such as the FLSA and similar state statutes.

1

9.     By misclassifying Drivers as independent contractors, Defendants also evade the tax burdens they would bear for employees—e.g., Social Security, Federal Unemployment Tax, etc.—which burdens are also shifted to the misclassified Drivers.

10.    By unlawfully treating Drivers as independent contractors, Defendants obtain a vast competitive advantage over competitor trucking companies that properly treat their drivers as employees and pay required wages and taxes in compliance with federal and state law.

11.    Defendants also violated the Truth in Leasing Act by requiring Drivers to sign Owner Operator Operating Agreements that failed to comply with the requirements of that Act. Those violations injured Drivers by contributing to their wages falling below the statutory minimum and inducing them to fall into debt.

12.    Schneider is one of the largest trucking companies in the country and its misclassification practices drive down wages across the trucking industry and undercut fair labor practices throughout the United States.

13.    For at least three years prior to the filing of this action, Defendants knowingly misclassified its Drivers as independent contractors, failed to pay them statutorily-required minimum wages, and made unlawful deductions from their earned compensation.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the FLSA and 49 U.S.C. § 14704. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1337 because the claims arise under federal laws regulating commerce.

2

16.     Plaintiff's claims involve matters of national and/or interstate commerce.

17.     Plaintiff and Class Members were engaged in commerce in their work for Defendants.

18.     This Court has supplemental jurisdiction over the state law claims raised by virtue of 28 U.S.C. §§ 1332 and 1367, including § 1367(a).

19.     Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391 because all Defendants reside in this District for venue purposes and/or are subject to the Court's personal jurisdiction in that they have substantial contacts with and conduct business in this District.

## PARTIES

**Named Plaintiff**

20.     Plaintiff Eric R. Brant is a resident of Ohio. His FLSA consent to sue form is filed herewith.

21.     Plaintiff Brant worked for Defendants as a truck driver from approximately December 2018 to August 2019.

**Defendants**

22.     Defendant Schneider National, Inc. is a publicly-traded transportation and logistics services company formed under the laws of Wisconsin.

23.     Defendant Schneider National Carriers, Inc. is a corporation formed under the laws of Nevada.

24.     Defendant Schneider National Carriers, Inc. is a motor carrier registered with the Department of Transportation.

3

25.     Defendant Schneider National, Inc. and Schneider National Carriers, Inc. have the same principal office located at 3101 S. Packerland Dr., Green Bay, WI 54313.

26.     Defendant Schneider Finance, Inc. is corporation formed under the laws of Wisconsin.

27.     Defendant Schneider Finance, Inc.'s principal office is located at 911 Glory Rd., Green Bay, WI 54304.

28.     Defendants Schneider National Carriers, Inc. and Schneider Finance, Inc. are wholly-owned subsidiaries of Defendant Schneider National, Inc.

29.     Defendants conduct business throughout the United States, including in Wisconsin.

30.     Doe Defendants 1 through 10 are individuals and corporations who are unknown to Plaintiff who therefore sues the Doe Defendants by fictitious names. Plaintiff will amend this Complaint to state their true names and capacities when they have been ascertained.

## CLASS ALLEGATIONS

**FLSA**

31.     Plaintiff brings his federal minimum wage claim under the collective action provision of the FLSA as set forth in 29 U.S.C. §216(b) individually and on behalf of a proposed collective action consisting of: "all persons who drove a truck for Defendants pursuant to an Owner Operator Operating Agreement with Defendants (OOOA) at any time during the three years prior to the filing of the initial complaint through the date of final judgment and subject to any equitable tolling for any applicable portion of the limitations period." This proposed collective action class is referred to herein as the "FLSA Class."

**Rule 23**

4

32.     Plaintiff brings the claims under Wisconsin wage law set forth herein under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of similarly situated persons defined as: "all persons who drove a truck for Defendants pursuant to an OOOA with Defendants at any time during the two years prior to the filing of the initial complaint through the date of final judgment and subject to any equitable tolling for any applicable portion of the limitations period." This proposed class is referred to herein as the Wisconsin Wage Class.

33.     Plaintiff brings his Wisconsin unjust enrichment claim pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and a similarly situated persons defined as "all persons who drove a truck for Defendants pursuant to an OOOA with Defendants at any time during the six years prior to the filing of the initial complaint through the date of final judgment and subject to any equitable tolling for any applicable portion of the limitations period." This class is referred to herein as the "Unjust Enrichment Class."

34.     Plaintiff brings his TILA claim pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of similarly situated persons defined as: "all persons drove a truck for Defendants pursuant to an OOOA during the four years prior to the filing of the initial complaint through the date of final judgment and subject to any equitable tolling for any applicable portion of the limitations period. This proposed class is referred to herein as the "TILA class.".

35.     Excluded from the Rule 23 Classes and the FLSA Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the relevant class period has had, a controlling interest in any Defendant or supervised any Driver.

36.     The persons in the Rule 23 Class are so numerous that joinder of all members is impracticable. The precise number of such persons is not known to Plaintiff, however, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

37.     Plaintiff is informed and believes, and based on such information and belief, alleges that there are thousands of Rule 23 Class and Subclass members.

38.     There are questions of law and fact common to the Rule 23 Classes that predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.   Whether the Rule 23 Class members have provided services to Defendants as employees rather than independent contractors under Wisconsin law;

b.   Whether Defendants failed to compensate Rule 23 Class members required minimum wages in violation of Wisconsin law;

c.   Whether Rule 23 Class members have incurred employment-related expenses and losses in performing their duties for Defendants;

d.   Whether Defendants have made deductions from compensation paid to Rule 23 Class members in violation of Wisconsin law;

e.   Whether Defendants imposed unconscionable and/or unlawful Lease and "Independent Contractor" contracts upon Drivers in violation of Wisconsin law;

f.   Whether Defendants were unjustly enriched by imposition of unconscionable contracts upon Drivers;

g.    Whether Drivers are entitled to declaratory judgment as to any of the claims identified herein;

h.   Whether the OOOA that Defendants required Drivers to sign failed to specify the compensation Drivers were to receive as required by 49 C.F.R. 376.12(d);

i.   Whether the OOOA that Defendants required Drivers to sign failed to clearly specify all the charge backs that Defendants deducted from Drivers' pay as required by 49 C.F.R. 376.12(h);

j.   Whether the OOOA Defendants required Drivers to sign failed to specify the amount of any escrow fund or performance bond required to be paid by Drivers as required by 49 C.F.R. 376.12(k); and

k.   The nature and extent of Class-wide injury and the appropriate measure of damages for the Class.

39.   The claims of Plaintiff are typical of the claims of the Rule 23 Class he seeks to represent insofar as he alleges that (a) Defendants have a policy and pattern or practice of exercising the powers of an employer with respect to him and the Rule 23 Class; (b) Defendants failed to pay him and the Rule 23 Class all wages due; (c) Defendants made unlawful and excessive deductions from his wages and the Rule 23 Class members' wages; and (d) Defendants failed to pay him and Class members the minimum wages for all hours worked; (e) Defendants subjected Plaintiff and Class members to unconscionable terms and conditions as set forth in the independent contractor and lease agreements; and (f) Defendants had a policy and practice of entering into OOOAs that violated the federal Truth in Leasing Act.

40.   Plaintiff and his counsel will fairly and adequately represent and protect the interests of the Rule 23 Class members.

41.   Defendants have acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

7

with respect to the Rule 23 Class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

42.　　The class claims are also properly maintainable as class actions under Rule 23(b)(3) of the Federal Rule of Civil Procedure. A class action is superior to other available methods for the fair and efficient adjudication of this case, particularly in the context of wage litigation like the present action, where individual Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against Defendants of this size and with far greater resources. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTS

43.　　Defendants hired Plaintiff and Drivers to transport goods in interstate commerce.

44.　　As an employee of Defendants, Plaintiff drove and dropped off freight across the United States.

45.　　Plaintiff was, at all relevant times, an "employee" of Defendants under the FLSA.

46.　　Plaintiff was, at all relevant times, an "employee" of Defendants under Wis. Stat. § 104.01.

47.　　Defendants were, at all relevant times, Plaintiff's "employer" and is the "employer" of proposed FLSA and Rule 23 Class Members as that term is defined by the FLSA and Wis. Stat. § 104.01. Alternatively, Defendants were, at all relevant times, joint employers of Plaintiff and the FLSA and Rule 23 Class Members.

48.     Doe Defendants 1 through 10 are individuals and corporations who, upon information and belief, are "employers" of proposed Class Members under the FLSA and Wis. Stat. § 104.01. Alternatively, Doe Defendants were, at all relevant times, joint employers of Plaintiff and joint employers of the proposed Class Members with one or more of the other Defendants.

49.     Defendant Schneider National, Inc. is the only shareholder identified on corporate filings for Defendants Schneider National Carriers, Inc. and Schneider Finance, Inc.

50.     Defendants have overlapping officers, including Mark Rourke who is the CEO of Defendant Schneider National, Inc. and President of Defendant Schneider National Carriers, Inc., Jonathon Johnson who is the Secretary and Treasurer of Defendant Schneider National Carriers, Inc. and Secretary of Defendant Schneider Finance, Inc., and Nicholas Anderson, who is the Director of Defendants Schneider National Carriers, Inc. and Schneider Finance, Inc.

51.     Defendants are an enterprise engaged in interstate commerce for purposes of the FLSA.

52.     Defendants are operated as a single enterprise within the meaning of 29 U.S.C. § 203(r)(1).

53.     All Defendants benefit from their scheme to misclassify the Drivers.

54.     Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

55.    Defendant Schneider National, Inc. has reported annual revenues exceeding $4 billion per year, with $4.97 billion in revenue for 2018, $4.74 billion in 2019, and revenues exceeding $1 billion in the first quarter of 2020 alone.[1]

56.    All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

57.    Schneider requires Drivers to sign an "Owner-Operator Operating Agreement" ("OOOA") by which Drivers lease their trucks to Defendants. The Agreement purports to classify Drivers as independent "owner-operators."

58.    Drivers leasing their truck from Schneider Finance, Inc. or any of Defendants' affiliated companies are required to sign a "Motor Vehicle Lease" (Lease) at the same time as, and as a package with the OOOA. Together, the OOOA and Lease formed a single contract.

59.    Both the Lease and OOOA provide that they are to be governed by the laws of the State of Wisconsin.

60.    The OOOA and the Lease are drafted by Defendants and both are presented to Drivers on a "take it or leave it" basis.

61.    The OOOA must be signed by Drivers in order to work for Defendants.

62.    Those Drivers who do not otherwise have a truck to drive must sign both the Lease and the OOOA in order to work for Defendants.

63.    Drivers are not given adequate time to review the documents and are prevented from seeking legal advice before signing.

---

[1] Defendant Schneider National Inc.'s reported revenue includes revenue derived from its subsidiaries, including Defendants Schneider Finance, Inc. and Schneider National Carriers, Inc.

64.     Plaintiff Brant signed Defendants' OOOA and Lease in December of 2018 and thereupon began working for Defendants as a truck driver until approximately August 2019.

65.     The OOOA makes the Driver liable for all costs of operating the truck including, *inter alia,* fuel, insurance, maintenance.

66.     While the OOOA states that Drivers are "independent contractors," the contract allows Defendants to exert all necessary control over Drivers' work and ensure that Drivers cannot operate as independent businesses, but instead must remain economically dependent upon Defendants.

67.     Despite the declarations in the OOOA that Drivers are "independent contractors," Schneider treats Drivers as employees as a matter of law in that, *inter alia*:

    a.  Schneider retains exclusive control and use of the truck and prohibits Drivers from operating the truck for any other company during the term of the OOOA unless Schneider provides prior written consent in its sole discretion;

    b.  Schneider retains the right to terminate Drivers at will;

    c.  Schneider retains exclusive control over the essential functions necessary for operation of the Drivers so-called "independent" operations, including, *inter alia*, locating customers, employing a sales force, employing brokers, purchasing and developing advertising, determining the freight that will be carried by Drivers, the terms and conditions under which that freight will be picked up and delivered, the rates that customers will be charged for the deliveries, employing dispatchers, assigning loads to Drivers, performing billing and payroll, performing repair and maintenance services, and performing the loading and offloading of freight;

11

d.  Schneider exercises unilateral control over the mileage compensation paid to Drivers, which may not reflect actual miles required to be driven by Drivers;

e.  Schneider controls Drivers' opportunity for profit or loss through its setting of the compensation rates;

f.  Schneider provides the trailers used by Drivers to perform their work;

g.  Schneider controls and provides other equipment necessary for Drivers to perform their work, including computer, communication, and GPS systems;

h.  Schneider controls Drivers' employment of helpers;

i.  Schneider controls the manner in which Drivers perform their work;

j.  Schneider monitors and controls the time of Drivers' departure and the time of arrival;

k.  Schneider requires Drivers to follow Schneider's policies;

l.  Schneider requires Drivers to have mobile communication systems Schneider uses to communicate with Drivers;

m.  Schneider monitors Drivers' exact location, speed, control of the truck, route, estimated time of arrival, rest time, driving time, and other aspects of Drivers' job performance by on-board computer and GPS systems;

n.  Schneider gives job instructions which Drivers are required to follow;

o.  Schneider monitors compliance with instructions, including delivery times, by use of on-board communications and GPS systems, as well as by telephone;

p.  Schneider requires the trucks driven by Drivers to identify Schneider and include Schneider's Department of Transportation number;

q.  Schneider requires Drivers to follow Schneider's drug testing program;

12

r.  Schneider controls the payments received by Drivers for the work they perform;

s.  Schneider controls the Drivers' use of their earnings by requiring Drivers to fund and maintain so-called "maintenance" and "escrow" accounts that are held by Schneider and funded through Schneider's deductions from Drivers' paychecks, and in some cases, directly from Drivers' bank accounts; and

t.  Imposing other restrictions that make it impossible as a practical matter for Drivers to exercise the right to drive for other trucking companies.

68.    In addition to the controls set forth in the OOOA which render Drivers economically dependent upon Schneider, the Lease signed by the Named Plaintiff and the members of the class gives Defendants even more control over Drivers who enter into a Lease, including:

a.  Schneider retains the right to place Drivers in default of the Lease at will by terminating the OOOA, which Schneider may do at any time for any reason;

b.  If Drivers fail to ensure Schneider receives all of the deductions from Drivers' paychecks or bank accounts sufficient to cover the numerous required fees set forth below, Drivers would also be in default under the terms of the Lease;

c.  If a Driver is placed into default under the Lease, Drivers are subject to having to immediately pay the *entire* amount owed for the entire life of the Lease;

d.  Drivers would also be subject to additional fees and costs that are prohibitively expensive and designed to prevent Drivers from ceasing to work for Schneider, including  a "remarketing fee" determined by Schneider in its sole discretion along with other fees such as a fee for returning to a specific location also determined by Schneider in its sole discretion;

13

e. Drivers would also be subject to having the truck repossessed, while not eliminating amounts owed under the Lease. In other words, Drivers would lose their ability to make any payments under the Lease through use of the truck, but still owe Schneider the entire amount of the Lease;

f. Drivers would also be subject to having all amounts earned and owed to Drivers subject to "collection," i.e. retained and not paid by Schneider and then allocated entirely towards the Lease payments;

g. Drivers would also be subject to having to pay Schneider all costs and expenses, including attorneys' fees, the fees of collection agencies, and fees for repossessing the truck (including costs of storing, refurbishing, reconditioning, and reselling the truck).

69. The threat of having the entire amount of the Lease become immediately due and owing, as well as the threat of having the truck repossessed, along with the additional fees and costs, results in Schneider exerting complete control Drivers, as such Lease Drivers have little or no choice but to keep working for Schneider or risk losing their truck and being saddled with additional charges even if they are not being paid required wages and the work is unprofitable.

70. As a result of the facts alleged in the foregoing paragraphs, Drivers are not independent contractors, but instead are employees of Schneider which has suffered and permitted and continues to suffer and permit Drivers to work.

71. The OOOA, individually and in combination with the Lease, is unlawful and unconscionable and unjustly enriches Schneider at the expense of Drivers, *inter alia,* insofar as they (a) call for the employment of Drivers but claim them to be independent contractors; (b) allow Schneider to terminate the OOOA and Lease at will but nevertheless require Drivers to continue

14

to make lease payments; (c) shift Defendants' risk of business downturn to Drivers; (d) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Drivers who are, in fact, employees.

72.     The OOOA also purports to alter the rights of Drivers under the FLSA in the event they are reclassified as employees and purports to require Drivers to indemnify Schneider for damages caused by Schneider's misclassification of the Drivers. These terms are unconscionable, illegal, and violate public policy.

73.     Schneider fails to pay minimum wages free and clear to Drivers.

74.     Instead, Schneider calculates the pay for Drivers by a weekly accounting that makes deductions from Drivers' pay for various expenses that are for the benefit of Schneider.

75.     Schneider requires Drivers to pay, *inter alia*, for fuel, insurance, taxes, tolls, ferry fees, equipment maintenance and repairs, road taxes, mileage taxes, licensing fees, permitting costs, and, in the case of Lease Drivers, lease payments.

76.     Schneider deducts the lease payments, security deposit payments, insurance payments, maintenance costs, and repair costs from Drivers' paychecks or directly from Drivers' bank accounts.

77.     Schneider also deducts from Drivers' paychecks amounts to fund an "escrow account" held by Schneider as purported "security" for unstated "obligations" of Drivers. At any point if the "escrow account" drops below the balance required by Schneider, Schneider deducts additional funds from Drivers' paychecks.

78.     Schneider also deducts amounts from Drivers' paychecks for a "Maintenance Reserve" held by Schneider and used to pay for repair and maintenance obligations. On information and belief, Schneider often pays itself from these so-called "maintenance reserves."

15

79.     On information and belief, the escrow and maintenance accounts are not returned to Drivers upon termination.

80.     Drivers are required to pay for comprehensive and collision damage insurance, bodily injury, and property damage insurance only from insurers approved by Schneider.

81.     On information and belief, Schneider receives insurance payments through its own captive insurer, thereby extracting additional revenue from the Drivers.

82.     If the trailers or other equipment provided to Drivers by Schneider are damaged during the course of Drivers' work, Schneider also deducts the cost of the repairs directly from Drivers' paychecks.

83.     The deductions described above are business expenses of Defendants that reduce Drivers' wages.

84.     While Defendants' scheme described herein shifts the costs of maintaining Defendants' fleet and general business operations to Drivers, Defendants keep all the benefits.

85.     This scheme also shifts the risk of trucking business downturns from Defendants to Drivers as Defendants are not obligated to give Drivers any specific amount of work while Drivers have continuing obligations to Schneider under the Lease.

86.     In some weeks, the deductions from Drivers' pay yield pay rates below federal and state wage guarantees.

87.     By way of example only, for the week of May 2, 2019, Plaintiff Brant drove over 3,000 miles via 5 loads for Schneider and received $0.00 as his net settlement.

88.     Drivers also receive no pay for certain compensable hours, including, *inter alia*, time Drivers are engaged to wait during non-sleeping time in the sleeper berth, and non-driving

time, such as pre- and post-inspection time, waiting time, time filling out paperwork, and other work time for which Plaintiff and Class Members were entitled to be paid.

89.     In some weeks, Defendants failed to pay Plaintiff and the proposed Class Members the minimum wage for each hour worked, including compensable hours for which no compensation was paid.

90.     Defendants' treatment of Plaintiff and the proposed Class Members as independent contractors caused them loss of wages, additional tax burdens, insurance obligations, and a variety of other monetary and non-monetary compensable harm.

91.     Defendants' failure to pay Plaintiff and the members of the proposed Class the proper wages required by federal law was willful.

92.     Defendants' unlawful conduct, as set forth in this Complaint, was intentional, willful, and/or in bad faith, and has caused significant damages to Plaintiff and proposed Class Members.

93.     Defendants were aware or should have been aware that the law required them to pay Plaintiff and proposed Class Members minimum wages required by law.

94.     Upon information and belief, Defendants apply the same unlawful policies and practices to the Drivers in every state in which they operate.

95.     The OOOA, and, where applicable, the Lease incorporated in the OOOA, failed to set forth the compensation that Drivers were to receive for their work by, *inter alia*, failing to specify deductions from the Drivers compensation for "accessorial amounts due."

96.     The OOOA, and, where applicable, the Lease incorporated in the OOOA, failed to clearly set forth the chargebacks to Drivers by, *inter alia*, failing to specify the reasons for assessorial amounts and insurance charged back.

97. The Defendants did not provide Drivers with copies of the freight bills from which the Drivers' compensation was calculated.

98. The OOOA, and, where applicable, the Lease incorporated in the OOOA, failed to set forth the amount of escrow fund or performance bond required to be paid by Lease Drivers when seeking to terminate their OOOA and use their equipment to work for a different carrier.

99. As a result of the actions specified in paragraphs 95-98 above, Defendants caused Drivers financial injury and lost compensation.

100. Defendants' failure to specify the amount of any escrow fund or performance bond required to be paid by Lease Drivers prevented Drivers from seeking employment elsewhere to improve their wages and conditions of employment. It caused Drivers who sought to work for other Carriers, like Plaintiff, additional financial injury.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE FAIR LABOR STANDARDS ACT)

101. Plaintiff individually and on behalf of the FLSA Class re-alleges and incorporates by reference all allegations in all preceding paragraphs.

102. At all relevant times, Plaintiff and the members of the FLSA Class are or were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

103. Within the applicable statute of limitations, Defendants failed to pay minimum wages to Plaintiff and proposed Class Members in violation of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq*. and its implementing regulations by failing to pay anything for certain hours worked and/or by failing to pay at least the minimum wage for each hour worked per workweek.

18

104. Defendants' failure to pay FLSA-required minimum wages was willful within the meaning of the FLSA.

105. Defendants' failure to comply with the FLSA minimum wage protections caused Plaintiff and proposed FLSA Class members to suffer loss of wages and interest thereon.

106. Plaintiff and the FLSA Class Members are entitled to relief for Defendants violations of the FLSA pursuant to 29 U.S.C. § 216(b).

107. To facilitate the right of FLSA Class Members to participate in this action, the Court should issue notice to the FLSA Class informing them of their right to participate in the suit by filing a consent to sue form. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' common policies and practice of not paying required minimum wages for all hours worked and who would benefit from the issuance of Court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated employees are known to Defendants and readily identifiable through Defendants' records.

## SECOND CAUSE OF ACTION

## (MINIMUM WAGE VIOLATIONS UNDER WISCONSIN LAW)

108. Plaintiff individually and on behalf of the Rule 23 Class re-alleges and incorporates by reference all allegations in all preceding paragraphs.

109. At all relevant times, Plaintiff and members of the Rule 23 Class were Defendants' "employees" within the meaning of Wis. Stat. §§ 103.001(5), 104.01(2), and 109.01(1r).

110. Wisconsin law requires employers to pay all employees at least the minimum wage for all hours worked. Wis. Stat. § 104.02; Wis. Admin. § DWD 272.03.

111. Wisconsin law also requires employers to pay employees "all wages earned by the employee to a day not more than 31 days prior to the date of payment." Wis. Stat. § 109.03.

112. Plaintiff and members of the Rule 23 Class are not exempt from the minimum wage requirements of Wisconsin law.

113. During the applicable limitations period, Defendants had a policy and practice of failing to pay minimum wages to Plaintiff and members of the Rule 23 Class for certain hours worked and/or by failing to pay at least the minimum wage for each hour worked per work week.

114. As a result of Defendants' failure to pay minimum wages earned and due to Plaintiff and members of the putative Rule 23 Class, Defendants have violated, and continue to violate, Wis. Stat. §§ 104.02, 109.03, and Wis. Admin § DWD 272.03.

115. As a result of these violations, Plaintiff and members of the Rule 23 Class, are entitled to relief, including their unpaid wages earned and due as provided by Wis. Stat. §§ 104.02 and 109.03, penalties due under Wis. Stat. § 109.11, and recovery of attorneys' fees, costs, and expenses of this action, as provided by Wis. Stat. § 109.03(6), as well as such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## THIRD CAUSE OF ACTION

### (UNJUST ENRICHMENT)

116. Plaintiff individually and on behalf of the Rule 23 Class re-alleges and incorporates by reference all allegations in the preceding paragraphs.

117. The OOOA and Lease Defendants required Plaintiff and members of the Rule 23 Class to sign are unconscionable.

118. Defendants' unconscionable agreements are void, or alternatively, voidable by under common law.

20

119.     Defendants have been unjustly enriched by their deductions from the wages of Plaintiff and members of the Rule 23 Class and by the unconscionable fees extracted by Defendants that shift virtually all costs of maintaining Defendants' fleet and general business operations to Drivers.

120.     Under the circumstances, it would be inequitable for Defendants to retain the amounts deducted from Drivers' wages and the fees paid by Drivers, who are in fact Defendants' employees.

## FOURTH CAUSE OF ACTION

## (VIOLATIONS OF THE TRUTH IN LEASING ACT)

121.     During the applicable limitations period, Defendants violated the provisions of the Truth in Leasing Act and 49 C.F.R. §376.12 by, *inter alia:*

> a.   not specify compensation that Drivers were to receive for their work;
>
> b.   failing to clearly specify all the charge backs that Defendants deducted from Drivers' pay;
>
> c.   failing to provide Drivers with copies of freight bills; and
>
> d.   failing to specify the amount of any escrow fund or performance bond required to be paid by Lease Drivers seeking to terminate their OOOA and drive for another company.

122.     As a result of these violations, Plaintiff and members of the Rule 23 Class have lost wages and other compensation due them and are entitled to relief, including recovery of attorneys' fees, costs, and expenses of this action, as provided by 49 U.S.C. § 14704.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter the following relief:

1. With respect to FLSA Violations:

   a. Certification of the FLSA Class and FLSA Subclass pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.;

   b. Permission for Plaintiff to notify fellow current and former employees of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C. § 216(b);

   c. Entry of a declaratory judgment that the practices complained of herein are unlawful;

   d. An award of damages for all minimum wages, wrongfully withheld deductions, and other unpaid wages that are due to the named Plaintiff and all similarly situated employees under the FLSA;

   e. Statutory liquidated damages under the FLSA;

   f. A finding that Defendants' violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years exclusive of periods in which the statute of limitations should be equitably tolled;

   g. Attorneys' fees and costs;

   h. Pre- and post-judgment interest;

2. With respect to the state law claims:

   a. Certifying this action as a class action under Fed. R. Civ. P. 23;

   b. Designating Plaintiff Brant as the Class Representative;

   c. Designating the undersigned counsel as Class Counsel;

   d. Entering a declaratory judgment that the practices complained of herein are unlawful;

e.   Fashioning appropriate equitable and injunctive relief to remedy Defendants'
     violations of law, including but not limited to an order determining that
     Defendants' OOOA and Lease are void, or voidable, or alternatively severing any
     unconscionably clauses and enjoining Defendants from continuing their unlawful
     practices described herein;

f.   Awarding statutory, compensatory, liquidated damages, appropriate statutory
     penalties, restitution, and other make whole relief to be paid by Defendants
     according to proof;

g.   Awarding Pre-judgment and Post-judgment interest as otherwise provided by law;

h.   Granting such other legal, injunctive and equitable relief as the Court may deem
     just and proper;

i.   Awarding Plaintiff reasonable attorneys' fees and costs, including expert fees; and

j.   Awarding Plaintiff such other and further relief as this Court deems just and
     proper.

3.   With respect to the TILA claims:

k.   Certifying this action as a class action under Fed. R. Civ. P. 23;

l.   Designating Plaintiff Brant as the Class Representative;

m.   Designating the undersigned counsel as Class Counsel;

n.   Entering a declaratory judgment that the practices complained of herein are
     unlawful;

o.   Fashioning appropriate equitable and injunctive relief to remedy Defendants'
     violations of law, including but not limited to an order determining that the leases
     that Defendants required Drivers to sign violate the requirements of the TILA;

23

p.   Awarding statutory, compensatory, liquidated damages, appropriate statutory penalties, restitution, and other make whole relief to be paid by Defendants according to proof;

q.   Awarding Pre-judgment and Post-judgment interest as otherwise provided by law;

r.   Granting such other legal, injunctive and equitable relief as the Court may deem just and proper;

s.   Awarding Plaintiff reasonable attorneys' fees and costs, including expert fees; and

t.   Awarding Plaintiff such other and further relief as this Court deems just and proper.

4.   Any other relief to which the named Plaintiff and similarly situated employees may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38(b)

Respectfully submitted this 10th day of July, 2020.

By: /s/ Summer H. Murshid
Summer H. Murshid
State Bar No.1075404
David C. Zoeller
State Bar No. 1052017
Emails:smurshid@hq-law.com
                  dzoeller@hq-law.com

**HAWKS QUINDEL, S.C.**
222 E Erie Street
Suite 210
P.O. Box 442
Milwaukee, WI 53202
(414) 271-8650 (office)
(414) 271-8442 (facsimile)

24

**GETMAN, SWEENEY & DUNN, PLLC**
Michael J.D. Sweeney (PHV Pending)
Meagan Rafferty (PHV Pending)
260 Fair Street
Kingston, NY 12401
Telephone: (845) 255-9370
Facsimile: (845) 255-8749
msweeney@getmansweeney.com
mrafferty@getmansweeney.com

**MARTIN & BONNETT, P.L.L.C.**
Susan Martin (*PHV Pending*)
Jennifer Kroll (*PHV Pending*)
Michael M. Licata (*PHV Pending*)
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

**Edward Tuddenham** (PHV Pending)
23 Rue Du Laos
Paris, France
33 684 79 89 30
etudden@prismnet.com

ATTORNEYS FOR PLAINTIFF

25