UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERIC R. BRANT,

    Plaintiff,

  v.            Case No. 20-C-1049

SCHNEIDER NATIONAL, INC.,
SCHNEIDER NATIONAL CARRIERS, INC.,
SCHNEIDER FINANCE, INC., and
DOE DEFENDANTS 1-10,

    Defendants.

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

  Plaintiff Eric R. Brant brought this action against Defendants Schneider National, Inc., Schneider National Carriers, Inc., Schneider Finance, Inc., and Doe Defendants 1-10, seeking redress for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et. seq.*, the Truth in Leasing Act (TILA), 49 U.S.C. § 14704, and Wisconsin state law. Brant alleges that Defendants failed to pay him statutorily required minimum wages and unlawfully deducted amounts from the wages he was paid in violation of the FLSA and Wisconsin state law. Brant also alleges that Defendants violated TILA by requiring him and putative class members to enter into leases that violated provisions of TILA. Before the court is Defendants' motion to dismiss the complaint. Dkt. No. 20. For the following reasons, the motion will be granted.

### LEGAL STANDARD

  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss under Rule 12(b)(6), the

court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

Under the incorporation-by-reference doctrine, a court may consider documents attached to a Rule 12(b)(6) motion if "they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In other words, the parties may submit documents mentioned in the plaintiff's complaint without converting the motion to dismiss into a motion for summary judgment. With these standards in mind, the court turns to the motion to dismiss.

## ALLEGATIONS IN THE COMPLAINT

Brant agreed to transport freight for Schneider National Carriers, Inc. (SNC), as a truck driver from December 2018 to August 2019. Compl. ¶¶ 20–21, Dkt. No. 1; Dkt. No. 20-2. Brant signed an Owner-Operator Operating Agreement (OOOA) with SNC on December 4, 2018, in which he agreed to use equipment owned or leased by him to transport freight made available by SNC. Compl. ¶ 57; Dkt. No. 20-2 at 1, 58. Brant also signed a separate contract with Schneider Finance, Inc. (SFI), on December 3, 2018, under which he agreed to lease from SFI a 2018 Freightliner tractor. Compl. ¶ 58; Dkt. No. 20-3. Brant alleges that those drivers who "do not otherwise have a truck to drive must sign both the lease and the OOOA in order to work for Defendants," and that the OOOA and Lease are presented together on a "take it or leave it basis." Compl. ¶¶ 60, 62. Brant asserts that drivers are not given adequate time to review the documents and are prevented from seeking legal advice before signing. *Id.* ¶ 63.

According to Brant, the OOOA improperly and purposefully misclassifies the drivers who sign it as independent contractors, materially benefiting Defendants. *Id.* ¶¶ 5, 8, 53. Brant alleges

2

that the terms of the contract, which will be discussed in more detail below, provide Defendants with the ability to "exert all necessary control" over the drivers' work, so that the drivers are economically dependent upon Defendants, and are not truly independent contractors. *Id.* ¶ 66. Thus, Brant alleges that he was in fact an employee of Defendants, not an independent contractor. Brant further asserts that Defendants have failed to pay minimum wages in violation of the FLSA and Wisconsin law.

Next, Brant claims that the OOOA and Lease are unconscionable because they

> (a) call for the employment of Drivers but claim them to be independent contractors; (b) allow Schneider to terminate the OOOA and Lease at will but nevertheless require Drivers to continue to make lease payments; (c) shift Defendants' risk of business downturn to Drivers; (d) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Drivers who are, in fact, employees.

*Id.* ¶ 71. This, Brant claims, gives rise to an unjust enrichment claim against Defendants, because Defendants have been unjustly enriched by deducting wages from Brant and by extracting fees that shift the costs of maintaining Defendants' fleet operations to the drivers. *Id.* ¶ 119.

Finally, Brant alleges that Defendants have violated TILA by failing to (1) specify the compensation that the drivers were to receive for their work, (2) specify various charge-backs that Defendants deducted from the drivers' pay, (3) provide drivers with copies of freight bills, and (4) specify the amount of any escrow fund or performance bond required to be paid by lease drivers who seek to terminate their OOOA and drive for another company. *Id.* ¶ 121. As a result, Brant claims drivers have lost wages and other compensation due to them. *Id.* ¶ 122. Brant seeks to bring these claims on behalf of himself and putative collective and class members.

## ANALYSIS

As a preliminary matter, Defendants request that the court strike four declarations, one from Brant himself and three others from opt-in plaintiffs, that Brant filed along with Brant's

response to Defendants' motion to dismiss. *See* Dkt. No. 32-1–32-4. These declarations should be stricken and given no consideration, Defendants contend, because the court's determination of a Rule 12(b)(6) motion to dismiss is based entirely upon the allegations of the complaint and documents incorporated therein. Citing *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), Brant contends that consideration of the declarations is proper because the declarations elaborate on the factual allegations contained in the complaint and illustrate the facts that Brant expects to be able to prove. Dkt. No. 32, at 4 n.3. While a Rule 12(b)(6) motion must generally be based "only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," the Seventh Circuit has made clear that a party opposing a Rule 12(b)(6) motion "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675 F.3d at 745 n.1. Thus, the court will not strike the declarations, as they are, at least to some extent, illustrative of what Brant expects to be able to prove. However, to the extent that the declarations are inconsistent with the allegations contained in the complaint and the documents incorporated therein, the court will defer to the complaint and incorporated documents.

### A. FLSA and Wisconsin Law Claims

Defendants have moved to dismiss Brant's FLSA and state law claims on the ground that Brant was properly classified as an independent contractor and, thus, those laws do not apply. Although the determination of statutory employee status is a fact-intensive inquiry, it is "amenable to a Rule 12(b)(6) analysis." *See Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 879 (C.D. Ill. 2017) (citing *Berger v. Nat'l Collegiate Athletic Assoc.*, 843 F.3d 285, 294 (7th Cir. 2016)). Because the court concludes that Brant was properly classified as an independent contractor, Brant's FLSA and state law claims must be dismissed.

4

Under the FLSA, an employee is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). And under Wisconsin law, an employee is defined as "every individual who is in receipt of or is entitled to any compensation for labor performed for any employer." Wis. Stat. § 104.01(2)(a). "It is well recognized that under the FLSA the statutory definitions regarding employment are broad and comprehensive in order to accomplish the remedial purposes of the Act." *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987). Courts have developed the "economic reality" test to discern whether an individual is a statutory employee or an independent contractor. *Id.* at 1534–35. The following factors are to be considered when determining the true nature of the working relationship:

   (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

   (2) the alleged employee's opportunity for profit or loss depending on his managerial skill;

   (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

   (4) whether the service rendered requires a special skill;

   (5) the degree of permanency and duration of the working relationship; and

   (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1535. No one factor by itself, or by its absence, is dispositive or controlling. *Id.* Brant bears the burden of establishing that he "performed work for an employer and is therefore entitled to compensation." *Berger*, 843 F.3d at 290.

   **1. The Nature and Degree of the Employer's Control**

   Defendants assert that the OOOA shows Brant exercised a vast amount of control over the manner of his work. Among other things, Defendants point to the fact that the OOOA provides

5

that Brant "shall determine the manner, means and methods of performance of all Freight Transportation Services." Dkt. No. 20-3, ¶ 2(b). Additionally, the OOOA states that Brant shall be responsible for wages, hours, meals, rest breaks, working conditions, management supervision; selecting, purchasing, leasing, financing, maintaining, operating, and insuring equipment; selecting all routes and properly weighing, inspecting, and measuring all shipments; and paying for the cost of fuel, fuel taxes, tolls, ferry fees, equipment maintenance, and fines. *Id.* ¶ 2(b)(i)–(iv). Defendants also point to the provision in the OOOA that states that Brant's business operations are independent of Defendants, such that Brant's operations are not subject to cancelation or destruction in the event the OOOA is terminated by either party. *Id.* ¶ 2(b)(v). Under the OOOA, Brant also had the right to accept or reject shipments from Defendants, *id.* ¶ 1, and to provide transportation services for "any other person or entity, on whatever basis and whenever [Brant] chooses, provided that [Brant] complies" with various federal regulations. *Id.* ¶ 3(b).

Brant counters that this factor weighs in favor of a finding of employee status because Defendants "exercise[] pervasive control over the operation as a whole." He alleges that Defendants control advertising, employ the sales force that locates customers, negotiate terms and conditions under which freight will be shipped, and control the infrastructure necessary for assigning loads to drivers. Furthermore, Brant contends Defendants exercise their control by requiring Brant to comply with Schneider's policies, providing drivers with delivery instructions, monitoring drivers' speed, location, route, and estimated time of arrival, and prohibiting drivers from working for any other carrier absent written consent from Defendants. Brant asserts that, under the leasing agreement, Defendants wield a great deal of power over drivers who lease their equipment from Defendants, such that Defendants can place Brant in default of his lease simply

6

by exercising its right to terminate the agreement at will. Finally, Brant contends that many of the contract provisions in the OOOA are "illusory" and contribute nothing to driver independence.

The district court's decision in *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876 (C.D. Ill. 2017), is instructive on this point. The plaintiffs in that case were also truck drivers who claimed they were misclassified as independent contractors. *Id.* at 879. In finding that the defendant did not control the manner in which the plaintiffs performed their work, the court looked to the plaintiffs' operating agreements with the defendant and observed that the agreements made clear that the plaintiffs "did not even have to engage in the 'work' themselves" and "could hire their own drivers to do so." *Id.* at 880. The court noted that it was "unaware of any traditional employer-employee relationship where an employer would ever allow an employee to use the employer's equipment for a competitor under any circumstances" or "where an employee can contract with a third party to perform the actual work of the employer." *Id.* at 880–81. This court, too, is unaware of any such employee-employer relationship.

The court concludes that Defendants' control over the manner in which Brant performed his work weighs in favor of finding independent contractor status. The OOOA provides for a variety of rights that allow Brant to exercise a significant amount of control over his own business. Brant was responsible for "selecting, purchasing, financing, maintaining, operating, and insuring" his equipment, was free to accept and reject work as he pleased, and was free to accept work from other companies, so long as he received written consent from Defendants. Brant was also free to hire his own employees and wouldn't be required to do any of the actual transportation himself. Compl. ¶ 24.

Brant argues that the question isn't "what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Brock v. Mr. W.*

*Fireworks*, 814 F.2d 1042, 1047 (5th Cir. 1987). The fact that the economic reality made exercising rights that Brant undoubtedly had under the terms of the OOOA difficult, however, is not enough to transform him into an employee. Economic reality commonly intrudes on what one may prefer to do. No doubt large retail sellers, like Wal-Mart, can dictate many of the terms under which producers of the goods it sells must operate. But this does not make them employees of Wal-Mart. Certainly, in some instances, it may be the case that what a worker actually *does* provides better indicia of his status than what he is entitled to do. But an independent contractor who is dissatisfied with the terms of his agreement may not transform his independent contractor status into statutory employee status merely by choosing to not exercise the rights that he has been given. To allow such a transformation would destroy the purpose of the agreement that both parties entered. Brant entered into a contract that gave him considerable control over his business. Defendants cannot be held responsible for Brant's decision whether or not to exercise those rights. The court thus concludes that this factor weighs in favor of a finding of independent-contractor status.

### 2. Opportunity for Profit and Loss

Next, Defendants argue that Brant was responsible for his own profitability, such that he was more akin to a business owner than an employee-driver for Defendants. Defendants assert that the OOOA permitted Brant to transport freight for other carriers after securing permission from Defendants and to accept or decline any specific deliveries offered by Defendants via Schneider's online portal. Dkt. No. 20-3, ¶¶ 1, 3(b), 4(g), 18. Defendants further note that Brant's ability to profit was largely dependent on how much freight he transported, what routes and decisions he took in completing loads, and whether he chose to employ additional drivers to increase his revenues. Brant argues that his right to recruit new customers was illusory, primarily

8

Case 1:20-cv-01049-WCG   Filed 01/19/21   Page 8 of 16   Document 58

because he was unable to drive for other carriers and was entirely dependent on the loads offered by Defendants.

But Brant's argument directly conflicts with the terms of the OOOA. The agreement specifically allows Brant to drive for other carriers and for any other person or entity, so long as Brant obtains consent from Defendants. *Id.* ¶ 3(b). Again, as noted by the court in *Derolf*, the ability to recruit new customers "does not seem to be something within the tasks of a mere driver." 259 F. Supp. 3d at 882. Additionally, Brant was the sole person in control of how many loads he decided to take, how often he drove (subject to federal regulations), and whether or not he chose to employ additional drivers to increase profits. At bottom, employees generally do not enjoy such a level of control over their work and do not have the ability to increase their own profitability. Here, Brant chose how much he worked, had the ability to drive for other entities, and had the ability to recruit new customers and drivers to assist him in increasing his profitability. This factor also weighs in favor of Defendants.

### 3. Investment in Equipment or Materials or Employment of Workers

Defendants contend that this factor weighs in favor of independent contractor status because Brant was required to make a significant investment in his own equipment. Defendants note that, despite the fact that they leased Brant his equipment, Brant was still required to put up a significant capital investment and was responsible for making that decision. Additionally, Defendants point to the fact the Brant was responsible for all operating expenses related to the equipment that he owned or leased. Dkt. No. 20-3, ¶ 2(b)(iv). Brant, however, argues that the investment Brant made was "entirely a function of Schneider's efforts and credit."

Again, Brant's argument misses the mark. Brant was fully empowered to buy or lease his equipment from any provider, and he was not required to lease his equipment from Defendants.

*Id.* ¶¶ 2(b)(viii), 14. Even if Defendants were, in effect, his only option from which to buy or lease equipment, Brant was still required under the OOOA and leasing agreement to take on considerable financial risk in order to operate the equipment and to cover operating expenses. *Id.* ¶ 2(b)(iv). Certainly, this is not a case where drivers were "simply given the trucks to complete their work." *Derolf*, 259 F. Supp. 3d at 883. As observed by the court in *Derolf*, which addressed this same issue, "the whole set up may be unfair but there is little question that the system requires the drivers to take a huge risk and invest in their own ability to arrange for as much freight to be hauled so as to turn a profit." *Id.* The court finds that to be the case here, and thus, this factor weighs in favor of Defendants.

### 4. Other Factors

The factor of whether the service rendered requires a special skill weighs in favor of Defendants. The court has little trouble reaching a conclusion on this issue, as the Seventh Circuit has concluded that driving commercial truck is a special skill. *See United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994) ("[I]t requires no leap of logic to conclude that the skills necessary to operate an eighteen-wheeler justify enhancement under the section. An over-the-road commercially employed truck driver is required to have a special operator's license. Members of the general public would have more than a little trouble successfully maneuvering a loaded eighteen-wheeler along roads and through parking lots."); *see also Derolf*, 259 F. Supp. 3d at 883.

The degree of permanency and duration of the working relationship also weighs in favor of Defendants. "Temporary relationships suggest independent contractor status while open-ended relationships suggest employee status." *Derolf*, 259 F. Supp. 3d at 883 (citing *Lauritzen*, 835 F.2d at 1537). Here, the OOOA provides that the agreement shall be in effect for a fixed term of one

10

Case 1:20-cv-01049-WCG   Filed 01/19/21   Page 10 of 16   Document 58

year and will not automatically renew. Dkt. No. 20-3, ¶ 21. This fixed time period suggests the existence of an independent contractor status.

Finally, there is no serious contention regarding the extent to which the service rendered is an integral part of the alleged employer's business. It is clear that commercial truck driving is integral to Defendants' operation and business. Thus, this factor weighs in favor of Brant, but it is hardly controlling. Masons, plasterers, and roofers all perform services that are integral to home building. Yet, most who provide such services operate their own businesses and are seldom within the employ of the home builder.

In sum, the court concludes that Brant was properly classified as an independent contractor. Brant had a considerable amount of control over his business and operations, had ample opportunity to control his profit and loss, was required to invest considerable sums into his equipment and materials, and possessed a special skill requisite for performing the work. All of this is plain from the language of the OOOA. While Brant may regret the arrangement and may also regret not exercising his rights under the OOOA, that does not change the analysis of the issue. Thus, Brant's FLSA and Wisconsin state law claims will be dismissed.

### B. Unjust Enrichment Claim

Defendants also assert that Brant's unjust enrichment claim must be dismissed. To state an unjust enrichment claim under Wisconsin law, a plaintiff must allege "three elements: '(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'" *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227 (1975)). Defendants assert

11

that Brant's unjust enrichment claim fails as a matter of law because the parties' relationship is governed by an implied contract. Generally, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract," *Cont'l Casualty Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (1991), as the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered.

Brant maintains that a claim for unjust enrichment is available because the OOOA and Lease are void or voidable for unconscionability. In particular, Brant alleges, "[t]he OOOA, individually and in combination with the Lease, is unlawful and unconscionable and unjustly enriches Schneider at the expense of Drivers, *inter alia*, insofar as they (a) call for the employment of Drivers but claim them to be independent contractors; (b) allow Schneider to terminate the OOOA and Lease at will but nevertheless require Drivers to continue to make lease payments; (c) shift Defendants' risk of business downturn to Drivers; (d) make Drivers responsible for the costs of carrying and maintaining Defendants' fleet; and (e) exact profits and reimbursements from Drivers who are, in fact, employees." Compl. ¶ 71. Other than asserting that misclassifying the drivers as independent contractors rendered the agreements unconscionable, Brant has not alleged facts from which it could be inferred that the OOOA and Lease are void or unenforceable. Because Brant's unjust enrichment claim only challenges the subject matter within the scope of the OOOA and lease agreement, it must be dismissed.

**C. TILA Claim**

Defendants assert that Brant's TILA claim must also be dismissed. Brant alleges that Defendants violated TILA by failing to comply with the requirements set forth in its regulations. "A carrier 'is liable for damages sustained by a person as a result of an act or omission of that

12

carrier or broker in violation [of the regulations].'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (quoting 49 U.S.C. § 14704(a)(2)) (alterations in original). Brant alleges that Defendants violated TILA by failing to (1) set forth the compensation that drivers were to receive for their work by failing to specify deductions from the drivers' compensation for accessorial amounts due; (2) clearly set forth chargebacks to drivers by failing to specify the reasons for accessorial amounts and insurance charged back; (3) provide drivers with copies of freight bills or other documents from which the drivers' compensation was calculated; and (4) set forth the amount of escrow fund or performance bond required to be paid by lease drivers. Compl. ¶¶ 96–98. Brant asserts that, as a result of Defendants' actions, Defendants caused the drivers financial injury and lost compensation. *Id.* ¶ 99.

Defendants argue that Brant's TILA claim must be dismissed because he does not plead that he or any driver suffered any actual damages that resulted from the alleged TILA violations. Brant asserts that he was only required to allege that he and other drivers were "disadvantaged by a lack of transparency in their contractual relationship with Defendant, resulting in damages, specifically under-compensation." Pl.'s Br. at 28, Dkt. No. 32 (quoting *Mervyn v. Nelson Westerberg, Inc.*, No. 11-C-6594, 2012 WL 6568338, at *3 (N.D. Ill. Dec. 17, 2012) (alterations omitted). He alleges that the lack of transparency in the OOOA and Lease disadvantaged drivers in their contractual relationship with Defendants. But TILA "requires owner-operators to show how they sustained damages because of the violations." *Landstar*, 622 F.3d at 1325; *see also Derolf*, 259 F. Supp. 3d at 886 ("The Court interprets 49 U.S.C. § 14704(a)(2) to confer upon TILA plaintiffs a pleading requirement to plausibly allege that they were injured, *i.e.* they were financially harmed, because of defendants' failures to adhere to the TILA regulations."). The complaint merely concludes that Brant and the other drivers were financially harmed by

Defendants' failure to adhere to the TILA regulations. It contains no allegations, however, identifying the actual harm Brant and the other drivers suffered or plausibly suggesting that they were injured as a result of any alleged TILA violation. Stated differently, Brant does not allege a causal connection between Defendants' alleged failure to provide certain information and his claim that he and the other drivers were not paid enough. Brant's vague allegations are not enough to open the doors to the time-consuming and expensive discovery that a class action entails. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Brant's TILA claim could be dismissed on this basis alone.

In any event, Brant's allegations that the OOOA and Lease violated TILA are belied by the specific provisions contained in the OOOA and Lease. Brant alleges that the OOOA failed to set forth the compensation that drivers were to receive for their work by failing to specify deductions from the drivers' compensation for accessorial amounts due. Compl. ¶ 95. He also alleges that the OOOA failed to specify the reasons for accessorial amounts charged back to drivers. *Id.* ¶ 96. As an initial matter, the OOOA contained sufficient information regarding the way in which his compensation would be calculated. Dkt. No. 20-3, ¶¶ 4(c), 4(e); Ex. B § I. In addition, the OOOA provided that accessorials are amounts paid to Brant, not deducted from payments made to him, and it set forth the fees, charges, balances, and other amounts that may be deducted from his Owner-Operator Payment. Dkt. No. 20-3, Ex. B. §§ I.B, II. Brant asserts that the itemized list of fees and charges only includes a method of computation that requires additional amounts to calculate the deduction amount and that this requires Defendants to provide additional documentation. TILA only requires "how the amount of each item is to be computed," however. 49 C.F.R. § 376.12(i).

Brant alleges that Defendants failed to provide drivers with copies of the freight bills from which their compensation was calculated. Compl. ¶ 97. He does not dispute that the OOOA

14

specifies that he had the "right to examine copies of Carrier's tariffs at Carrier's home office during reasonable business hours" and that Defendants would provide "a copy of the rated freight bill (or a computer-generated summary)" to drivers when the driver's "payment is based on a percentage of revenue." Dkt. No. 20-3, ¶ 4(e). Instead, he asserts that Defendants failed to actually provide the freight bills or allow the drivers to examine copies of Defendants' tariffs. Brant does not allege, however, that he sought and was denied the opportunity to review copies of Defendants' tariffs or that Defendants made the information unavailable.

Brant alleges that the OOOA failed to set forth the amount of escrow fund or performance bond required to be paid by lease drivers when seeking to terminate their OOOA and use their equipment to work for a different carrier. Compl. ¶ 98. The OOOA sets forth the amount to be deposited and maintained in an escrow account with respect to equipment leased by Brant to Defendants. Dkt. No. 20-3, ¶ 10(a), Ex. B § II. The agreement also provides that the Escrow Funds shall be paid and disbursed to Brant within 45 days of termination along with an accounting of all final settlements and disbursements. *Id.* ¶ 22(b). While Brant asserts that the OOOA and Lease did not specify the amount of the additional security deposit required, Appendix A to the Lease states the amounts of applicable security deposits. Dkt. No. 20-4 at 11.

In sum, the OOOA and Lease provided Brant with the information required by TILA and its regulations. For these reasons, Brant's TILA claim must be dismissed.

## CONCLUSION

For these reasons, Defendants' motion to dismiss for failure to state a claim (Dkt. No. 20) is **GRANTED**. The dismissal is without prejudice, however. Brant will be allowed thirty days from the date of this order in which to file an amended complaint curing the defects noted herein.

15

If no amended complaint is filed within the time allowed, the case will be dismissed and final judgment entered.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of January, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge