UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERIC R. BRANT, THOMAS CAMPBELL, and
BRIAN MINOR, individually and on behalf of
all other similarly situated persons,

           Plaintiffs,

        v.                          Case No. 20-C-1049

SCHNEIDER NATIONAL INC., et al.,

           Defendants.

---

## DECISION AND ORDER

---

      Plaintiffs Eric Brant, Thomas Campbell, and Brian Minor brought this action against Defendants Schneider National, Inc., Schneider National Carriers, Inc., Schneider Finance, Inc., and Doe Defendants 1–10, seeking redress for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, the Truth in Leasing Act (TILA), 49 U.S.C. § 14704, and Wisconsin state law. Presently before the court is Plaintiffs' motion for conditional certification and for issuance of a notice. For the following reasons, Plaintiffs' motion will be denied.

### BACKGROUND

      Schneider National Carriers, Inc. (SNC) is a federally authorized interstate motor carrier. SNC transports freight using company drivers that Schneider classifies as employees as well as drivers that Schneider refers to as owner operators and classifies as independent contractors. SNC enters into fixed-term Owner-Operator Operating Agreements (OOOA) with the independent owner operators. On December 3, 2018, Brant signed an OOOA and lease with Defendants, agreeing to lease a truck from Defendants to transport freight. He signed a second OOOA on January 2, 2019, and stopped driving truck under the agreement in August 2019. Campbell signed

a lease with Defendants on February 16, 2018, and signed the OOOA on March 27, 2018. He signed a second OOOA on January 3, 2019, and stopped driving truck under the agreement in July 2020. Minor signed a lease with Defendants on June 5, 2017. He signed an OOOA on March 29, 2018, and a second OOOA on January 2, 2019. Minor stopped driving truck under the agreement in May 2019.

Plaintiffs allege that Defendants improperly misclassified drivers as independent contractors because the OOOA created an employer/employee relationship as defined by the FLSA. They assert that, as a result of its decision to classify owner operators as independent contractors, Schneider paid drivers less than the minimum wage in certain workweeks. Plaintiffs seek conditional certification of the following class:

> All individuals who leased a truck from Schneider Finance, Inc. and drove the leased truck for Schneider National, Inc. or any of its subsidiary, related, or affiliated companies pursuant to an Owner-Operating Agreement at any time during the period December 2013 to the present.

Pls.' Br. at 8, Dkt. No. 105.

## ANALYSIS

The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, under the FLSA, "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). District courts have discretionary authority to implement the "opt in" procedure by facilitating notice to potential plaintiffs to an FLSA collective action. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

2

"Neither the FLSA nor its implementing regulations define the term 'similarly situated,' and neither the Supreme Court nor the Seventh Circuit has specified a procedure courts must employ to decide certification and notice issues under the FLSA." *Hudson v. Protech Security Group, Inc.*, 237 F. Supp. 3d 797, 799 (N.D. Ill. 2017) (citation omitted). However, district courts within the Seventh Circuit, like most federal courts across the country, have applied a two-step test to determine whether an FLSA claim may proceed as a collective action. *See Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008).

First, the court examines whether the plaintiff has demonstrated a "reasonable basis" to believe that he is similarly situated to potential class members. *Id.* At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. The plaintiff may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). Though the conditional-certification stage is a lenient standard, it is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. Because a plaintiff's "discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer,'" courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at *4 (quoting *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982)). Thus, where the plaintiff has not made "at least a modest factual showing that certification is appropriate, it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Id.* (internal quotation marks and citation omitted). If the class is

3

conditionally certified, notice may be sent to other potential class members and discovery may proceed.

At step two, usually on the defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, No. 10-C-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). The court assesses whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

As an initial matter, Defendants argue that the court should not employ the two-step certification process but instead should analyze the case under the Fifth Circuit's recently established framework set forth in *Swales v. KLLM Transportation Services, LLC*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit rejected the two-step certification process and held that district courts should "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id.* at 441.

The court declines Defendants' invitation to depart from the two-step process. *Swales* is not binding on this court, and other courts that have addressed the issue have refused to adopt *Swales* and continued to adhere to the two-step approach. *See McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771 (N.D. Ind. 2021); *Piazza v. New Albertsons, Inc.*, No. 20-C-3187, 2021 WL 3645526 (N.D. Ill. Aug. 16, 2021); *Amoko v. N&C Claims Serv., Inc.*, 577 F. Supp. 2d 408 (D.S.C. 2021); *Holder v. A&L Home Care & Training Ctr., LLC*, 552 F. Supp. 3d 731 (S.D. Ohio 2021); *Thomas v. Maximus, Inc.*, No. 21-C-498, 2022 WL 1482010 (E.D. Va. May 10, 2022); *see also In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021) (denying petition for writ of mandamus, reasoning that district court's decision to apply the two-step collective certification framework instead of *Swales* was not "patently erroneous or outside

4

the bounds of judicial discretion"). The court finds no reason to depart from the two-step approach that has been long applied by courts in this district and throughout the Seventh Circuit and now turns to the issue of whether the potential plaintiffs are "similarly situated" for purposes of conditionally certifying the collective action under the FLSA.

Plaintiffs contend that they have met the minimal burden to show that others in the potential class are similarly situated. They assert that the drivers were victims of Defendants' common policy of misclassifying drivers as independent contractors and that, as a result, drivers did not receive minimum wage for each work week they drove for Schneider. Because all drivers signed materially similar operating agreements that set forth the terms and conditions of work and were required to comply with Schneider's policy manual, Plaintiffs maintain that the drivers operated under materially identical terms and conditions of work. But, as the Seventh Circuit held in this very case, it is "well established" that "the terms of a contract do not control the employer-employee issue under the Act." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022). Indeed, "in determining whether a person is an employee under the Act, what matters is the economic reality of the working relationship, not necessarily the terms of a written contract." *Id.* at 662.

"The FLSA considers employees those who as a matter of economic reality are dependent upon the business to which they render service." *Simpkins v. DuPage Housing Auth.*, 893 F.3d 962, 964 (7th Cir. 2018) (internal quotation marks and citation omitted). The Seventh Circuit has compiled a list of factors to assist courts in determining the "true nature of the relationship," such as:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

5

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987) (citation omitted). "[N]o criterion is by itself, or by its absence, dispositive or controlling." *Id.* at 1534. The court has also recognized that these factors "are not the exclusive means by which the ultimate determination can be made." *Simpkins*, 893 F.3d at 964 (citing *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 291 (7th Cir. 2016) ("We have declined to apply multifactor tests in the employment setting when they fail to capture the true nature of the relationship between the alleged employee and the alleged employer." (cleaned up))). Instead, the court's inquiry is "aimed at determining the economic reality of the working relationship by examining the totality of the circumstances." *Id.* (citation omitted).

Based on the record before the court, Plaintiffs have not presented evidence to establish that the putative class members are similarly situated such that the economic realities test can be applied to the class as a whole. Although the determination of workers' status under the economic realities test is "a legal rather than a factual one," *Laruitzen*, 835 F.2d at 1535, the fact-intensive and case-specific nature of this legal question makes it ill-suited for collective treatment. *See id.* at 1542 (Easterbrook, J., concurring) (describing the economic realities test as "[a] fact-bound approach calling for the balancing of incommensurables" and calling for the court to "abandon these unfocused 'factors' and start again"); *see also Swales*, 985 F.3d at 442 ("As KLLM points out, the individualized nature of the economics-realities test is why misclassification cases rarely

6

make it to trial on a collective basis."); *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (denying motion for conditional certification under FLSA, noting that, under the economic reality test, "the court must take into consideration the actual history of the parties' relationship, necessitating an individualized examination of the multiple factors relating to each drivers' employment").

With respect to the degree of control and opportunity for profit, Plaintiffs argue that Schneider controlled advertising, billing, and negotiation with customers over the terms of the shipment contracts; drivers are held to the same operational standards and policies as Schneider's company drivers; Schneider had the right to gather and monitor data about driver speed, collisions, and hours of service; Schneider set strict pick-up and delivery times, which meant that drivers had no choice with respect to their routes; and drivers could not risk turning down shipments because doing so meant a loss of income. But maintaining operational standards and policies to meet customers' demands, and monitoring driver speed, collisions, and hours of service out of concern for public safety are not control.

Defendants also presented evidence that drivers choose which loads to haul from Schneider or even other carriers; decline routes that do not fit within their schedule or do not maximize profit; dictate their own routes; and decide how to park, hook, load, and unload the delivery. Some drivers stated that they try to pick lightweight loads to maximize fuel efficiency. Others indicated that they avoid selecting northern routes during the winter months, while certain drivers preferred loads in the Midwest and the north because the plowing during inclement weather is more reliable. Though Plaintiffs assert that they were not able to take advantage of the ability to hire help because Schneider maintained control over the number, nature, and profitability of the shipments it offered, some drivers indicated they were free to haul loads for any carrier as long as they followed the OOOA and Department of Transportation regulations. Defendants also presented evidence that

7

drivers dictated their own schedules and had the discretion to take time off for days or months at a time without getting permission from any supervisor or manager at Schneider. The assessment of these factors is individualized and fact specific.

The consideration of the alleged employee's investment in equipment or materials is also highly individualized. Some drivers contract through their own limited liability companies and pay business formation costs, work with and pay for their own accounting services, and choose and pay for their own liability insurance. Others indicated that they purchase their own equipment, such as laptop computers, smart phones, tow weather equipment, fifth wheel pullers, and tools. Some drivers stated that they are responsible for inspecting the truck, scheduling regular maintenance to keep the truck efficient and operational, and saving for future maintenance and repairs.

The court notes that, at this stage, it is not applying the economic realities test to determine whether Defendants improperly classified workers as independent contractors. Instead, the court has only evaluated whether the economic realities test can be applied on a class-wide basis. The parties' briefing and evidence regarding the economic realities factors demonstrate that there are enough differences between Plaintiffs and the putative class members that the court would be required to conduct an individualized analysis of the economic realities test before it could be satisfied that each person fell under the auspices of the FLSA. The nature of Plaintiffs' claim is not amenable to efficient resolution on a collective basis. The court concludes that Plaintiffs have not made an adequate showing that they are similarly situated to the members of the putative class. Therefore, the motion for conditional certification will be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification and for issuance of a notice (Dkt. No. 104) is **DENIED**. The parties' agreed motion for limited supplemental

briefing (Dkt. No. 135) is **DENIED** as moot. The Clerk is directed to set the matter on the court's calendar to discuss further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of May, 2023.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge