# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

ERIC BRANT, THOMAS CAMPBELL, and
BRIAN MINOR, individually and on behalf of
all other similarly situated persons,

                Plaintiffs,

v.

Schneider National, Inc., Schneider National
Carriers, Inc., Schneider Finance, Inc., & DOE
Defendants 1-10,

                Defendants.

Case No. 1:20-cv-01049-WCG

Judge William C. Griesbach

## PLAINTIFFS' MOTION TO RECONSIDER ORDER DENYING FLSA COLLECTIVE ACTION OR, ALTERNATIVELY, TO CERTIFY AN INTERLOCUTORY APPEAL

# Table of Contents

Table of Authorities ..................................................................................................... iii

I.         MOTION FOR RECONSIDERATION ................................................................. 1

    A.    Standard ...................................................................................................... 1

    B.    The District Court Ignored the Seventh Circuit's Ruling Regarding Control ............. 4

    C.    The District Court Committed an Error of Law in Focusing on How the Collective Exercised Their OOOA Rights ................................................................. 6

    D.    The District Court Committed Clear Error in Holding That Whether Drivers Hired Help or Drove for Others Precludes Conditional Certification .................................. 9

    E.    The District Court Committed Clear Error in Holding That the Extent to Which Drivers Took Time Off Was Relevant to Conditional Certification ........................ 10

    F.    The Court Erred in Holding That It Will Be Necessary to Inquire into How Drivers Contract and How Much They Spend on Tools and Equipment ............................. 11

II.        IF THE COURT DOES NOT RECONSIDER, IT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b). ............................ 13

    A.    The Order Presents Questions of Law ........................................................ 14

    B.    The Questions Are Controlling ................................................................. 15

    C.    The Controlling Issues Are Contestable .................................................... 15

    D.    Immediate Resolution of the Question Will Speed Up the Ultimate Resolution of the Issues Presented by This Case ....................................................... 15

CONCLUSION ...................................................................................................... 16

Case 1:20-cv-01049-WCG   Filed 05/24/23   Page 2 of 21   Document 140-1

# Table of Authorities

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois*,
   219 F.3d 674 (7th Cir. 2000) ............................................................................. 14

*Arunin v. Oasis Chicago, Inc.*,
   No. 14 CV 6870, 2016 WL 851989 (N.D. Ill. Mar. 4, 2016) ........................................ 2, 3, 5

*Brant v. Schneider National, Inc.*,
   43 F.4th 656 (7th Cir. 2022) ................................................................... *passim*

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) ............................................................................. 15

*Martin v. Albrect*,
   802 F.Supp. 1311 (W.D. Pa. 1992) ....................................................................... 11

*National Van Lines, Inc. v. NLRB*,
   273 F.2d 402 (7th Cir. 1960) .............................................................................. 2, 5

*In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*,
   04 CV 2714, MDL No. 1604, 2006 WL 1371458 (N.D. Ill. May 16, 2006)........................... 15

*Oswald v. McGarr*,
   620 F.2d 1190 (7th Cir. 1980) ............................................................................. 14

*Oto v. Metro. Life Ins. Co.*,
   224 F.3d 601 (7th Cir. 2000) ............................................................................... 1

*Pittman by & through Hamilton v. Cnty. of Madison, Illinois*,
   970 F.3d 823 (7th Cir. 2020) ................................................................................ 2

*Rothwell Cotton Co. v. Rosenthal & Co.*,
   827 F.2d 246 (7th Cir. 1987) ................................................................................ 1

*Ruiz v. Affinity*,
   754 F.3d 1093 (9th Cir. 2014) .......................................................................... 1, 13

*Sec. of Labor v. Lauritzen*,
   835 F.2d 1529 (7th Cir. 1987) ................................................................... *passim*

*Silent Woman, Ltd. v. Donovan*,
   585 F.Supp. 447 (E.D. Wis. 1984) ....................................................................... 11

*Tice v. Am Airlines, Inc.*,
   373 F.3d 851 (7th Cir. 2004) ................................................................................ 2

*Tom v. Generac Power Sys., Inc.*,
   No. 17-C-1413, 2018 WL 5886020 (E.D. Wis. Nov. 9, 2018)........................................... 2

iii

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................................ 1, 13, 14, 15

FLSA .................................................................................................................................... 1, 2, 5

**Other Authorities**

18 C. Wright, A. Miller & E. Cooper, *Fed. Prac. And Pro.* § 4478 (1981).................................... 2

iv

Plaintiffs move this Court to reconsider its May 4, 2023 Decision and Order, Doc. 137, (hereafter "Order") denying conditional certification of this action as an FLSA collective action on behalf of the following persons:

> All individuals who leased a truck from Schneider Finance, Inc. and drove the leased truck for Schneider National, Inc. or any of its subsidiary, related, or affiliated companies pursuant to an Owner-Operator Operating Agreement at any time during the period December 2013 to the present.[1]

Doc. 104. The Court's Order denying the conditional certification motion conflicts with the Seventh Circuit decision in the prior appeal in this case and applies erroneous legal standards to the question of whether the collective is similarly situated. Accordingly, Plaintiffs move the Court to reconsider the Order, or, in the alternative, to certify the Order denying conditional FLSA certification for immediate appeal pursuant to 28 U.S.C. § 1292(b).

## I. MOTION FOR RECONSIDERATION

### A. Standard

Motions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir. 1987). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v.*

---

[1] Plaintiffs' collective was further defined as follows: "Individuals" includes individuals who operated under a business name and/or who signed an Owner-Operator Operating Agreement ("OA") using a business name. *See Ruiz v. Affinity*, 754 F.3d 1094, 1103-4 (9th Cir. 2014) (discounting significance of forming a business entity in determining employee status). Excluded from the FLSA collective are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the relevant class period has had, a controlling interest in any Defendant. Also excluded are Fleet Drivers—i.e., individuals who signed operating agreement(s) to lease two or more operational trucks to Schneider at the same time. A driver who leased one truck after another to Schneider but only one at a time, or who leased a second truck while his or her original truck was inoperative would be a member of the class from 2018.

1

*Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997) ). *See generally, Tom v. Generac Power Sys., Inc.*, No. 17-C-1413, 2018 WL 5886020, at *1 (E.D. Wis. Nov. 9, 2018).

In this case, the finding that Plaintiffs have not even made a modest showing that the drivers are similarly situated with respect to the question of their employee status for purposes of FLSA conditional certification is based on several manifest errors of law:

First, the Order contradicts certain key holdings of the Seventh Circuit in the prior appeal that are now the law of the case and law of the Circuit. *See, e.g.*, *Tice v. Am Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004) (According to law of the case doctrine "a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it"); *Pittman by & through Hamilton v. Cnty. of Madison, Illinois*, 970 F.3d 823, 830 (7th Cir. 2020) (same). Plaintiffs' motion tracked the holding of the Seventh Circuit and provided evidentiary support to show that each of the allegations of the amended complaint that the Seventh Circuit found sufficient to allege employee status applied to the collective as a whole, thereby establishing for purposes of conditional certification that the collective is similarly situated with respect to the question of employee status.

Second, the Court's order misapplied the factors governing employee status in two ways: (1) The Court erred by focusing on how Defendants claimed Schneider allegedly exercised its right to control certain individual drivers rather than focusing on Schneider's *right* to control with respect to drivers as a whole. *National Van Lines, Inc. v. NLRB*, 273 F.2d 402, 405 (7th Cir. 1960) ("it is the right and not the exercise of control which is the determining element."); *Arunin v. Oasis Chicago, Inc.*, No. 14 CV 6870, 2016 WL 851989, at *3 (N.D. Ill. Mar. 4, 2016) (same). The fact that Schneider may have *exercised* its right to control differently with respect to different class members is irrelevant to the question of employee status and the right to proceed collectively on a

2

determination of employee status. *Id.* (2) The Court committed a similar legal error by focusing on individual questions regarding how drivers exercised their rights under the Owner-Operator Operating Agreement ("OOOA"), including the right to choose loads, turn down loads and take time off. As the Seventh Circuit made clear, the relevant question for employee status is not how individual drivers exercised their rights, but whether the rights they were accorded gave them the *opportunity* for profit and loss based on managerial skill. *Sec. of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987) (listing the second factor bearing on employee status as "the alleged employee's opportunity for profit or loss depending upon his managerial skill"). Although the OOOA gave all drivers the right to select and turn down loads and to take time off, Plaintiffs provided considerable evidence to support their allegation that those rights did not afford drivers the opportunity to profit from managerial skill and that the primary determinant of drivers' earnings were the loads (and prices) that Schneider chose to offer. The Seventh Circuit made clear that if Plaintiffs were to prevail on that issue at trial it would indicate employee status, regardless of how individual drivers may have exercised their limited rights under the OOOA.

Third, the Court's Order mischaracterizes the role of the OOOA. Doc. 137 at 5. While the Seventh Circuit correctly noted that economic reality, rather than the terms of the contract control, that does not mean that the contract plays no role as the Court's opinion seems to hold. Schneider drafted the OOOA and, as a result, to the extent it grants Schneider rights to control drivers, those rights must be considered under the control factor whether Schneider exercises them or not. However, the contract terms do not control with respect to rights the OOOA purports to grant to drivers that, as a matter of economic reality, drivers are unable to exercise. Contract rights that cannot be exercised are generally irrelevant to the employee/independent contractor analysis. The Seventh Circuit adheres to this distinction throughout its opinion. For example, it relies upon the

3

monitoring provisions of the OOOA to find that Schneider had control over drivers, *Brant*, 43 F.4th at 666-7, but holds the OOOA's provisions giving drivers the right to hire employees or work for other carriers are inconsequential if Plaintiffs prove their allegation that those rights could not be exercised as a matter of economic reality. *Id.* at 667-68. It should be noted, however, that even in those two instances the Seventh Circuit relied on the conditions imposed by the OOOA to find that Plaintiff Brant's allegation that he could not hire workers or drive for other carriers plausible. *See id.* at 668.

Fourth, the Court commits fundamental error with respect to analyzing a motion for conditional certification by making merits determinations that should be made on a full record following close of discovery.

**B.     The District Court Ignored the Seventh Circuit's Ruling Regarding Control**

As the Court noted, Plaintiffs' declarations provided evidentiary support for the claim that "Schneider controlled advertising, billing, and negotiation with customers over the terms of the shipment contracts; drivers were held to the same operational standards and policies as Schneider's company drivers; Schneider had the right to gather and monitor data about driver speed, collisions, and hours of service; Schneider set strict pick-up and delivery times, which mean that drivers had no choice with respect to their routes; and drivers could not risk turning down shipments because doing so meant a loss of income." Doc. 137 at 7. The Court's order rejected all of that evidence of Schneider's control over the drivers with the statement that "maintaining operational standards and policies to meet customers' demands, and monitoring driver speed, collisions and hours of service out of concern for public safety are not control." Doc. 137 at 7. Both parts of that ruling fly in the face of the Seventh Circuit's opinion.

First, while Schneider specifically argued on appeal that its operational standards and policies were designed to meet "customer specifications," Response Brief of Appellees at 18, *Brant v.*

4

*Schneider National, Inc.*, 43 F.4th 656 (7th Cir. 2022), the Seventh Circuit rejected that argument, finding that Plaintiff Brant plausibly alleged he was an employee because, *inter alia,* "requir[ing] workers to adhere to [ ] formal policies and procedures can suggest employee status." *Brant v. Schneider National, Inc.*, 43 F.4th 656, 666 (7th Cir. 2022). Second, the Seventh Circuit noted that "Schneider also retained the right to gather remotely huge quantities of data about how drivers conducted their work, including (i) 'Owner Operator's speed, hard braking incidents, collisions, and critical driving events;' (ii) 'hours of service;' (iii) 'engine operational data;' and (iv) 'any other telematics data which may be captured.'" *Id.* at 666-667 (quoting OOOA at ¶ 5(f) (Docs. 71-2 & 71-3)). Moreover, the Court emphasized that Plaintiff Brant had "to consent to allow Schneider to use this data 'for any reason [Schneider] deems advisable'" including "terminat[ing] the Agreement immediately for any traffic law violation identified." *Id.* at 667. Although much of the data Schneider collected relates to safety issues, the Seventh Circuit nevertheless held that this "high degree of scrutiny into the fine details of the drivers' operations, along with the constant threat of termination for non-compliance, weighs in favor of status as an employee rather than an independent contractor." *Id.* That holding does <u>not</u> permit this Court to find Schneider's monitoring does not constitute control for purposes of the FLSA.

Defendants offered <u>no</u> evidence to contradict this point. While some of Schneider's affiants state that they were never disciplined for traffic violations, that is irrelevant: "It is the right and not the exercise of control which is the determining element." *Nat. Van Lines v. NLRB*, 273 F.2d 402, 405 (7th Cir. 1960); *Arunin v. Oasis Chicago Inc.*, No. 14 CV 6870, 2016 WL 851989, at *3 (N.D. Ill. Mar. 4, 2016). Because Schneider's monitoring rights discussed by the Seventh Circuit were set forth in the OOOA, all members of the collective are necessarily similarly situated with respect to these aspects of control.

5

Not only does the Order's conclusion that the imposition of operational standards and policies and the monitoring of drivers "are not control" violate the Seventh Circuit's holding, it is also an improper finding to make at this stage of the litigation. Whether particular aspects of Schneider's right to control weigh in favor of employee or independent status is a <u>merits</u> question that cannot be addressed at this early stage of the litigation. At the conditional certification stage the question is whether Schneider's rights to control were the same for all members of the collective. Plaintiffs' evidence shows that they were (in ways the Seventh Circuit found plausibly supports employee status) and nothing in Schneider's evidence contradicts that fact. Schneider's arguments as to why it believes imposing operational standards and monitoring drivers are not indicative of employee status are merits arguments which can only be considered on a full record following discovery, not at the conditional certification stage.

### C. The District Court Committed an Error of Law in Focusing on How the Collective Exercised Their OOOA Rights

In its second reason for denying conditional certification the Court stated:

> Defendants also presented evidence that drivers choose which loads to haul from Schneider or even other carriers; decline routes that do not fit within their schedule or do not maximize profit; dictate their routes; and decide how to park, hook, load, and unload delivery. Some drivers stated that they try to pick lightweight loads to maximize fuel efficiency. Others indicated that they avoid selecting northern routes during the winter months, while certain drivers preferred loads to the Midwest and north because the plowing during inclement weather is more reliable. . . . The assessment of these factors is individualized and fact specific.

Doc. 137 at 7-8. This statement misstates the record insofar as it finds that Defendants presented evidence that drivers did, in fact, drive for other carriers. Defendants' driver declarations simply repeated the undisputed fact that the OOOA gave drivers the right to haul for other companies if they complied with the OOOA and DOT requirements; none of those declarants claimed to have actually exercised that right. Thus Defendants' declarations do not contradict Plaintiffs' allegation that the conditions imposed by the OOOA were so onerous that drivers "could not, as a practical

matter, carry loads for anyone other than' Schneider"—an allegation that Plaintiffs have supported with substantial evidence that the Seventh Circuit found that to be entirely plausible. *Brant*, 43 F.4th at 669-670. Whether the OOOA conditions were, in fact, that onerous is a merits question. What matters for present purposes is that the OOOA requirements were the same for all drivers making the question of whether those requirements prevented drivers from carrying loads for other carriers a question common to the collective. By finding that drivers could, in fact, drive for other companies, the Court acted in direct conflict with the Seventh Circuit's mandate and erred by making a merits fact finding at the conditional certification stage.

The Court's statement quoted above is also in conflict with the Seventh Circuit's mandate insofar as it lists drivers' ability to "dictat[e] their routes" as a matter bearing on the question of employee status. The Seventh Circuit was clear: "the ability to determine a driving route is simply a freedom inherent in the nature of the work and not determinative of the employment relation." *Brant*, 43 F.4th at 670.

As for the Court's statement that drivers had the right to decline loads that did not fit within their schedules, choose loads that maximized their profit or that met personal preferences with respect to location, (aside from the conclusory reference to maximizing *profits* for which there is no foundation), all agree that the OOOA gave drivers rights regarding scheduling and choosing loads. But the Court's statement that an individualized inquiry into *how* drivers exercised those rights is necessary was error. As the Seventh Circuit made clear, the question is not how each driver exercised those rights, but whether those rights afforded drivers a realistic *opportunity* to make a profit based on their managerial skill, or, conversely, whether "the single biggest determinant of [a driver's] profit for a workweek was not his managerial skill but Schneider's choice of loads to offer him—or require him—to haul." *Id* at 668-670. *See also Sec. of Labor v.*

7

*Lauritzen,* 835 F.2d 1529, 1535 (7th Cir. 1987) (listing the second factor bearing on employee status as "the alleged employee's opportunity for profit or loss depending upon his managerial skill"). Which was the primary determinant of drivers' income is, of course, a merits question that cannot be resolved at the conditional certification stage. What matters at this stage is that: (i) All drivers had the same rights to choose loads, to take time off, etc.; (ii) Plaintiffs offered more than "modest" evidence that, for a variety of reasons applicable to all drivers (including the need to meet weekly lease payments, the inability to know what loads might be offered in the future, and the inability to accept work from other carriers) those rights had only a marginal effect on drivers earnings and that the primary determinant of their profit were the loads that Schneider chose to offer them. *Brant*, 43 F.4th at 669. The Seventh Circuit noted in particular that the inability to drive for other carriers—a fact common to the collective that Plaintiffs supported with substantial, uncontradicted evidence (see above)—gives "weight to [Plaintiff Brant's] limited ability to adjust the profitability of the shipments he took from Schneider." *Id.*; and (iii) Defendants presented nothing to contradict Plaintiffs' evidence that the loads and prices set by Schneider, rather than managerial skill, were the major determinant of driver earnings, not their exercise of managerial skill. *See* Baldwin Decl. (Doc. 105-9 at ⁋ 36), Brant Decl. (Doc. 105-10 at ⁋ 37), Campbell Decl. (Doc. 105-11 at ⁋ 41), Rich Decl. (Doc. 105-12 at ⁋ 36), Collins Decl. (Doc. 105-13 at ⁋ 42), Minor Decl. (Doc. 105-14 at ⁋ 35), and Tate Decl. (Doc. 105-15 at ⁋ 34). (The fact that many of those declarants appear to have made good money is meaningless since they do not discuss whether the source of their profitability is profitable load offers from Schneider or their own management skill). Thus, contrary to the Court's holding, the issue for trial is not how each individual driver picked or declined loads or chose to take time off, but whether those rights gave drivers a genuine opportunity to make a profit and operate independently from Schneider. If they did not, then there

would be no need to inquire into how individual drivers exercised their rights because the Seventh Circuit has already held that if the loads and prices offered by Schneider were the primary determinant of driver profit, that indicates employee status. *Brant*, 43 F.4th at 670.

### D. The District Court Committed Clear Error in Holding That Whether Drivers Hired Help or Drove for Others Precludes Conditional Certification

The Court's third reason for denying conditional certification was:

> Though Plaintiffs assert that they were not able to take advantage of the ability to hire help because Schneider maintained control over the number, nature, and profitability of the shipments offered, some drivers indicated that they were free to haul loads for any carrier as long as they followed the OOOA and Department of Transportation regulations.

Doc. 137 at 7. The statement that "some drivers indicated they were free to haul loads for any carrier as long as they followed the OOOA and DOT regulations" is untrue and contrary to the Seventh Circuit mandate for the reasons discussed above. The ability to hire help presents exactly the same error. No one disputes that the OOOA purports to give all drivers the right to hire help. The merits question with respect to hiring drivers, as the Seventh Circuit recognized, is whether drivers could exercise the right as a practical matter. Here again, the Seventh Circuit cited the detailed OOOA provisions that "authorized Schneider to charge a variety of fees for each new driver hired by Brant[,]" and that "Schneider reserved 'the right to arrange, *at the Owner Operator's expense,* to have a qualified third-party vendor monitor' the new drivers' compliance with federal safety standards." *Brant*, 43 F.4th at 667-668 (emphasis in the original) (quoting OOOA at ¶ 18(b)(i)(5) (Docs. 71-2 & 71-3)). The Seventh Circuit found those OOOA restrictions plausibly support the conclusion that it was not economically feasible for drivers to hire help rendering the right meaningless as an indicator of independent status. *Id.* at 668. Plaintiffs further supported this allegation with declarations from six drivers stating that they never hired driver

helpers and none of Schneider's driver declarations indicate that they did either.[2] Thus the uncontradicted conditional certification evidence indicates that the collective is similarly situated with respect to this factor as well. Whether or not it was possible to hire helpers as a practical matter is a merits question, but one that is common to the collective.

### E. The District Court Committed Clear Error in Holding That the Extent to Which Drivers Took Time Off Was Relevant to Conditional Certification

In its fourth reason for denying conditional certification the Court stated,

> Defendants also presented evidence that drivers dictated their own schedules and had the discretion to take time off for days and month at a time without getting permission from any supervisor or manager at Schneider. The assessment of these factors is individualized and fact specific.

Doc. 137 at 7-8. *How* any given driver arranged his or her schedule and how much time he or she took off may present individual questions, but those questions are completely irrelevant to the issue of employee status. The parties agree that the OOOA gave drivers the right to set their own schedules and take time off and that is all that matters for conditional certification. The merits question—whether those rights afforded drivers the opportunity to make a profit from managerial skill (which would indicate independent status) or were simply freedoms that contributed nothing to their economic independence as Plaintiffs allege (which would make them irrelevant to the issue of employee status)—is thus common to the class and supports conditional certification. As Plaintiffs have noted, where, as here, Plaintiffs have both alleged and offered substantial, uncontradicted evidence that as a practical matter under the OOOA, drivers can only work for Schneider and no other company, the personal freedom to set one's schedule and take time off is of no economic value and does not indicate independent status. *See, e.g.*, *Silent Woman, Ltd. v.*

---

[2] One of Schneider's declarants, Steven Williams, Doc. 112-18, states that he hired a driver but the declaration makes clear that that driver was hired to drive Williams' second truck. Because William had two trucks, a situation that changes the employee/independent contractor analysis, he is not a member of the proposed collective and his evidence is irrelevant.

*Donovan*, 585 F.Supp. 447 (E.D. Wis. 1984) (fact that seamstresses with minor children to care for worked "only when their household duties allowed" did not indicate independent status; they were employees of the company they worked for); *Martin v. Albrect*, 802 F.Supp. 1311 (W.D. Pa. 1992) (same).Defendants' declarants do not contend that they in fact drove for other carriers.[3] The Seventh Circuit apparently agreed since Defendants made this same argument to the Court of Appeals and the Court did not even bother to mention it. Thus the Court's holding that it will be necessary to inquire into *how* individual drivers organized their schedules and *how much time* each took off is legally incorrect. As discussed above, the only question is whether, in the circumstances created by the OOOA, and drivers' inability to drive for other companies, the right to set one's schedule or take time off afforded drivers a genuine *opportunity* to profit from managerial skill.

### F. The Court Erred in Holding That It Will Be Necessary to Inquire into How Drivers Contract and How Much They Spend on Tools and Equipment

The Court's final reason for denying conditional certification was its conclusion that "consideration of the alleged employee's investment in equipment or materials is also highly individualized." Doc. 137 at 8. According to the Court,

> Some drivers contract through their own limited liability companies and pay business formation costs, work with and pay for their own accounting services, and choose and pay for their own liability insurance. Others indicate that they purchase their own equipment, such as laptop computers, smart phones, tow [sic] weather equipment, fifth wheel pullers, and tools. Some drivers state that they are responsible for inspecting the truck, scheduling regular maintenance to keep the truck efficient and operational, and saving for future maintenance and repairs.

Doc. 130 at 8. Here again, the Court's focus on the fact that individual drivers purchase different items of equipment and that some pay for accounting services is *legally irrelevant* to the question of whether they were employees. The *Lauritzen* court made clear that in considering "the alleged

---

[3] Again, although Declarant Steven Williams, Doc. 112-18, states he "contract[ed] with another carrier," because William had two trucks he is not a member of the proposed collective and his evidence is irrelevant.

11

employee's *investment* in equipment and materials required for his task," only "large expenditures, such as risk capital" and "capital investments" should be considered. *Lauritzen*, 835 F.2d at 1537. Thus, insofar as the Court's order focuses on small purchases—phones, pullers, and tools—it is contrary to *Lauritzen.*

As for capital investments and large expenditures, all members of the collective have exactly the same expenditures—i.e. their truck, fuel, insurance, communication devices, and maintenance.[4] While that investment may seem large, Plaintiff Brant alleged that he was only able to make those expenditures using Schneider's credit. The Seventh Circuit was adamant that to the extent those expenditures were made on the basis of Schneider's credit they represent no investment at all and, in fact, "weigh[] in favor of employee status." *Brant*, 43 F.4th at 670-671. Whether drivers' relied on Schneider's credit to such an extent that it indicates employee status is a merits question. What matters at the conditional certification stage is that Plaintiffs provided substantial evidence indicating that all collective members relied on Schneider's credit for their large expenditures. To begin with, the collective is defined to include only drivers who leased a truck from Schneider. All drivers who lease from Schneider rely on Schneider's credit since all of Schneider's leases involve no money down, no payments for the first several weeks, and subsequent payments deducted from earnings. *See, e.g.*, Lease, Doc. 71-4. Schneider also provides fuel cards to all drivers so that they can purchase fuel on Schneider's credit. *Id*. In addition to that evidence, Plaintiffs provided declarations of drivers attesting to the fact that they relied upon Schneider's credit for all of the major expenditures. *See* Baldwin Decls. (Docs. 105-9 at ¶¶ 12, 13), Brant Decl. (Doc. 105-10 at ¶¶ 14, 15), Campbell Decl. (Doc. 105-11 at ¶¶ 17, 18), Rich Decl. (Doc. 105-12 at ¶¶ 13, 14), Collins Decl. (Doc. 105-13 at ¶¶ 18, 19), Minor Decl. (Doc. 105-14 at

---

[4] *See* OOOA at ¶ 5(c) (Docs. 71-2 & 71-3) (requiring all drivers to comply with regular maintenance schedule); *and see* Lease at ¶ 11 (Doc. 71-4) (same).

¶¶ 12, 13), and Tate Decl. (Doc. 105-15 at ¶¶ 11, 12). None of Schneider's driver declarations contradict Plaintiffs on this point. Thus, the Court's conclusion that it will be necessary to inquire into the precise amount that each driver invested in his truck, fuel, insurance or maintenance is not relevant to the employee/independent contractor question. To deny conditional certification because different drivers spent different amounts on non-capital expenditures directly violates the Seventh Circuit's mandate.[5]

Finally, with respect to the right of drivers to contract through their own limited liability companies, the evidence is undisputed that the OOOA gave all drivers that right. OOOA at ¶ 2(j) (Docs. 71-2 & 71-3). If the ability to create a business entity is a relevant factor in the employee/independent contractor analysis, which Plaintiffs dispute, it has the same relevance for all drivers, whether they chose to take advantage of that provision or not. *See, e.g.*, *Ruiz v. Affinity*, 754 F.3d 1093, 1103-1104 (9th Cir. 2014). Thus, to the extent that fact is relevant, it supports conditional certification.

## II.    IF THE COURT DOES NOT RECONSIDER, IT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).

District courts may certify a non-final order in a civil case for interlocutory appeal if the order involves a "controlling question of law," about which there is "substantial ground for differences of opinion," and "immediate appeal ... may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Four statutory criteria" must be met to satisfy § 1292(b):

---

[5] Even if some drivers did not rely on Schneider's credit for certain purchases such as insurance that would not raise individual issues for several reasons: First, whether or not a driver relied on Schneider's credit for insurance or other major purchases can be proven from Schneider's records and would not require individual testimony. Second, because no one factor is controlling the fact that some drivers may not have relied on Schneider's credit to the same extent as others is unlikely to make a difference to the outcome of the employee status question. Third, if, in the unlikely event, some members of the collective did *not* rely on Schneider's credit, their employment status can be determined separately as a subclass.

13

"there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675–76 (7th Cir. 2000) (emphasis original). Because "[t]he criteria are conjunctive, not disjunctive" all four must be satisfied for an interlocutory appeal to be certified. *Id.*at 676. The Seventh Circuit has spoken of the "duty" of the district court to allow an immediate appeal to be taken when all of the criteria are met. *Id.* at 677.

As set forth below, in the event the Court does not grant reconsideration, the criteria for immediate appeal are met and the Order denying conditional certification should be certified for appeal.

### A.    The Order Presents Questions of Law

The order presents several controlling questions of law: Whether the Order violates the Seventh Circuit's mandate in *Brant v. Schneider National, Inc.* The intended meaning of the Court of Appeals mandate, both its letter and its spirit, present legal questions. *See Oswald v. McGarr*, 620 F.2d 1190, 1195–96 (7th Cir. 1980) (stating mandamus "may be appropriately utilized to correct a misconception of the scope and effect of (an) appellate decision" and noting that a trial court "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of (the) court deciding the case") (quoting *Yablonski v. United Mine Workers of America*, 454 F.2d 1036, 1038 (D.C.Cir.1971)). Whether the Order improperly decided merits questions at the conditional certification stage presents a legal question as does the question of whether the Order applies the proper legal standard for determining whether the proposed collective is similarly situated—i.e. whether the Order improperly focuses on Schneider's exercise of control rather than its right to control; whether it is proper to focus on how individual drivers exercise the rights afforded by the OOOA rather than focusing on whether those common rights actually provide drivers with an opportunity to profit from their managerial skill;

14

and whether it is proper to focus on the amounts that individual driver's invest in tools and equipment rather than on whether they rely upon Schneider's credit for those investments.

### B. The Questions Are Controlling

A question of law is "controlling" for purposes of § 1292(b) if its "resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 04 CV 2714, MDL No. 1604, 2006 WL 1371458 at *2 (N.D. Ill. May 16, 2006) (citing *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996)). Controlling means "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quotation marks omitted).

The questions raised by this motion are controlling in that they determine whether the Court properly denied conditional certification or whether it abused its discretion in denying certification. They will also control future decisions in this case. The meaning and scope of the Seventh Circuit's mandate and the correct manner of applying the *Lauritzen* factors will have a profound impact both on the evidence that will be admitted at trial and on the proper instructions for the jury.

### C. The Controlling Issues Are Contestable

While Plaintiffs believe that they are correct as to the meaning and law of the case effect of the Seventh Circuit's mandate, as well as the proper standard for applying the *Lauritzen* factors, both at the conditional certification stage and at trial, the Court clearly believes otherwise if it decides to deny reconsideration.

### D. Immediate Resolution of the Question Will Speed Up the Ultimate Resolution of the Issues Presented by This Case

Resolving the legal issues raised above, particularly those related to the meaning and effect of the Seventh Circuit's mandate and the proper application of the *Lauritzen* factors will materially speed up the resolution of the issues presented in this case.

15

The collective will appeal the Court's Order now or later in any event, but without an immediate appeal, there will be a trial which, in light of the Order's errors regarding the Seventh Circuit's mandate and the proper application of the *Lauritzen* factors, will likely result in an appeal from the trial itself. Should an appeal be successful, the entire trial will have to be repeated applying the correct legal standards. It would be far more efficient for the Court and all parties to resolve the meaning of the mandate and the proper application of the *Lauritzen* factors now rather than expending effort on a potentially meaningless trial.

## CONCLUSION

For all of the foregoing reasons, this Court should reconsider and reverse its Order denying conditional certification. In the event the Court declines to do so the Court should certify the Order denying conditional certification for interlocutory appeal.

Respectfully submitted this 24th day of May, 2023.

By: */s/ Emily Sullivan*

GETMAN, SWEENEY & DUNN, PLLC
Matt Dunn
Emily J. Sullivan
260 Fair Street
Kingston, NY 12401
(845) 255-9370
mdunn@getmansweeney.com
esullivan@getmansweeney.com

MARTIN & BONNETT, P.L.L.C.
Susan Martin
Jennifer Kroll
Michael M. Licata
4747 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
(602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

16

Edward Tuddenham
42 Ave. Bosquet Paris, France 75007
33 684 79 89 30
edwardtuddenham@gmail.com

**ATTORNEYS FOR PLAINTIFFS**